| | | |
|---|---|---|
| KEONTA FISHER, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | Jury Trial Demanded |
| | ) | |
| v. | ) | Judge |
| | ) | |
| BILFINGER INDUSTRIAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Keonta Fisher ("Plaintiff"), by his attorney, Natalie Blackman, for his Complaint against Defendants, Bilfinger Industrial Services, Inc. ("Defendants"), states as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action under the Civil Rights Act of 1964, *42 U.S.C. Section 2000e* et seq., as amended by the Civil Rights Act of 1991, ("Title VII") and *42 U.S.C. Section 1981* ("Section 1981") to challenge Defendants' unlawful discrimination against him based on his race.

2.      Plaintiff also seeks relief for retaliation he suffered as a result of complaining about the unlawful conduct.

## JURISDICTION AND VENUE

3.      Jurisdiction is based on *28 U.S.C. §§ 1331* and 1343, and principles of pendent and supplemental jurisdiction.

4.      Venue is proper in the Western District of Louisiana pursuant to *28 U.S.C. § 1391*(a).

## PARTIES

5.      Plaintiff was formerly employed by Defendants as a welder and pipefitter. Plaintiff began his employment on September 10th, 2015.  Plaintiff's race is black.

6.      Defendant Bilfinger Industrial, Inc. ("Bilfinger") is an electrical and construction contractor headquartered at 15933 Clayton Road #305, Ballwin, Missouri.

7.      At all times relevant to this Complaint, Bilfinger employed more than one hundred and fifty (150) employees and were engaged in an industry affecting commerce at Proctor and Gamble in Pineville, LA.

## FACTUAL ALLEGATIONS

### *Plaintiff Was Subjected to Racial Discrimination*

8.      Keonta Fisher began his employment with Bilfinger industrial services on September 10th, 2015.

9.      During his welding exam, he heard statements from Charles Looney about a bet made on how long he will last under the supervision of his foreman, Tommy Coutee (Mr. Coutee) were going around the company.  He was informed that Mr. Coutee would get rid of him one way or another.

10.     On Friday, September 11, 2015, Plaintiff finished and passed his welding exam as required by the company.

11.     The following Monday, September 14th, 2015, he requested tools from Mr. Coutee in order to perform his job duties. Mr. Coutee's response was, "you don't need them because you're not going to be here long enough".  Mr. Coutee also requested that Plaintiff help him when the bet of getting Plaintiff to quit or be terminated. Coworkers Charles Looney and Ked Smith were present during this conversation.

12.     At no point did Mr. Coutee assist him in getting the tools needed. It would be two weeks later until he received everything he needed.

13.     Within the first two days of his job, Plaintiff was subjected to constant profanity and derogatory remarks from Mr. Coutee.  Plaintiff and Ked, the only black males of the crew, were referred to as "boy".

14.     At this point, feeling bullied and intimidated, Plaintiff addressed these issues his Union Steward, Tim Belguard, and General Foreman, Kendall Martin.  He explained it was an uncomfortable, threatening situation. He was informed that his transfer could only be permitted at the request of Superintendent, Scott Crader.

15.     Plaintiff then also addressed his concerns to Scott Crader and requested a transfer. While this transfer request was denied, he was assured that Mr. Coutee would no longer be a problem.

16.     The harassment continued.  Mr. Coutee would get behind Plaintiff while Plaintiff was bent over and mock sexual acts. Mr. Coutee would curse Plaintiff out constantly and not provide him with the necessary tools to work. Ked Smith and Charles Looney were witnesses to this.

17.     Plaintiff felt singled out because these things would not happen to any of his Caucasian coworkers.

18.     Not only that, several of these instances took place in front of General foreman, Kendall Martin (Mr. Martin).  Instead of stopping these instances, Mr. Martin would laugh and partake in the harassment.

19.     At one point, in December of 2015, both Mr. Martin, Mr. King, and  Mr. Coutee insisted Plaintiff mop up feces off a roof and pulled him off of his job. They even insisted Plaintiff put the feces there. Plaintiff was forced to tape off the area as  Mr. Martin, Mr. King, and  Mr. Coutee ridiculed him about it.

20.     On Wednesday, January 6th 2016  at 1:30 PM , General foreman Kendall Marton, stuck his finger in his nose and wiped that same finger across Plaintiff's face. When asked by Plaintiff to stop, Mr. Martin repeated the same action. Tommy Coutee participated in the harassment and humiliation by poking the plaintiff in the side to ridicule, humiliate, and provoke him in front of crew members. Crew members that were present during the incident were Ked Smith, Leo Braley, Kurt Perkins, and Charles Looney.

21.     This incident, along with several others, was reported to Tim Belguard. Several requests to were made to transfer to another crew to avoid further confrontation.

22.     No transfer was permitted. Transfer was always expressed to be at Scott Crader's discretion.

23.     In addition, Plaintiff was assaulted by another General foreman, George Bold, who cursed at him and drug him out of a room, yelling "get your shit and get the fuck out of here".

24.     Later in January of 2016,  after the  Plaintiff had requested numerous times to be moved from the uncomfortable, intimidating, fearful and hostile work environment he was subjected to, he found out that another coworker had been moved. The crew member that was moved was also black. He was moved under the pretenses that "apprentices are moved every 6 months" according to Scott Crader. Kurt Perkins was not sent to a new crew even though he had been within the crew for nine months or longer. Kurt Perkins is Caucasian. It seemed as if the denials of the plaintiff's requests to be moved were intentional.

25.     On February 1, 2016 , the Plaintiff was informed by another foreman, Waylon, that Tommy Coutee had referred to Plaintiff as a nigger.  Waylon was acting foreman for the day.

26.     Waylon stated he told Mr. Coutee, " give me keyhole  [Plaintiff] because I know yall bump heads and that will give him a break from you." Waylon informed Plaintiff that Mr. Coutee responded by saying, "that's good, because I just split them two niggers up this morning."

27.     On February 2, outside of the Union meeting to address the continuous issues Plaintiff continued to have under the supervision of Tommy Coutee and Kendall Martin, a physical altercation took place between Tommy and Plaintiff.

**Plaintiff Was Subjected To Retaliation**

28.     Plaintiff was immediately told upon walking into work on Wednesday , February 3rd that he was moved to another crew. Plaintiff was called into the office for a meeting with Daniel Long, Supervisor. Mr. Long informed Plaintiff if Plaintiff reported anything to Procter & Gamble Human Resources Department or anyone else, Plaintiff would be fired for insubordination.

29.     Tim Bilguard, Job Steward, was present during this meeting with Daniel Long.

30.     During the following months, Plaintiff was still subjected to harassment by Tommy Coutee in the form of Mr. Coutee making faces and yelling at him.

31.     Plaintiff felt helpless as he would lose his job for reporting the constant harassment which lead to anxiety, loss of enjoyment in the workplace and at home, insomnia, depression, and ultimately his job.

### Defendants Failed to Exercise Reasonable Care To Prevent and Correct Unlawful Conduct

32.     Defendants' management directed, encouraged, and participated in the above-described unlawful conduct. Further, Defendants failed to exercise reasonable care to prevent and correct promptly any racial discrimination and harassment. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendants or to avoid harm otherwise. He reported his concerns several times and requested transfers

33.     Defendants acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

### Plaintiff Timely Filed A Charge of Discrimination

34.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

### Plaintiff Suffered Damage

35.     As a direct result of Defendants' unlawful conduct Plaintiff has suffered extreme emotional distress.

36.     Plaintiff has lost wages, compensation and benefits as a result of Defendants' unlawful conduct.

37.     Plaintiff's career and reputation have been irreparably damaged as a result of Defendants' unlawful conduct.

38.     Plaintiff suffered embarrassment and humiliation as a result of Defendants' unlawful conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendants' unlawful conduct, as well as incurring attorneys' fees and costs.

### Punitive Damages

39.     Defendants acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### RACE DISCRIMINATION

### IN VIOLATION OF TITLE VII

40.     Plaintiff realleges paragraphs 8 through 28 and incorporates them by reference as paragraphs 8 through 28 of Count I of this Complaint.

41.     Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, on the basis of race.

42.     Harassment on the basis of race that creates an abusive and hostile work environment, such that the conditions **[*14]** of employment are altered, is also actionable under Title VII as race discrimination.

43.     By the conduct as alleged herein, Defendants subjected Plaintiff to race discrimination in violation of Title VII.

## COUNT II

### RETALIATION

### IN VIOLATION OF TITLE VII

44.     Plaintiff realleges paragraphs 8 through 32 and incorporates them by reference as paragraphs 8 through 32 of Count II of this Complaint.

45.     Title VII, specifically *42 U.S.C. Section 2000e-3*, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

46.     By their conduct, Defendants subjected Plaintiff to unlawful retaliation in violation of Title VII.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court find in his favor and against the Defendants as follows:

a.     Declare that the acts and conduct of Defendants violate Title VII, and the anti-retaliation provisions of those laws;

b.     Award Plaintiff the value of all compensation and benefits lost as a result of Defendants' unlawful conduct;

c.     Award Plaintiff the value of all compensation and benefits he will lose in the future as a result of Defendants' unlawful conduct;

d.     In the alternative to paragraph (d), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

e.     Award Plaintiff compensatory damages;

f.     Award Plaintiff punitive damages;

g.     Award Plaintiff prejudgment interest;

h.     Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

i.     Award Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure , Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted,

s/Natalie Blackman
Natalie Blackman #35662
412 N. 4th St. Suite 102
Baton Rouge, LA 70802
Phone: (318) 639-4529
Fax: (888) 463-4952