UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| KEONTA FISHER | DOCKET NO.: 1:18-cv-00154 |
|---|---|
| VERSUS | |
| | JUDGE DEE D. DRELL |
| BILFINGER INDUSTRIAL SERVICES, INC. | MAG. JUDGE PEREZ-MONTES |

MEMORANDUM RULING

Before the court is a motion for summary judgment (Doc. 55) filed by defendant, Bilfinger Industrial Services, Inc. ("Bilfinger") in which it seeks dismissal of all claims against it in the above captioned matter. For the reasons expressed below, the court finds the defendant's motion should be **GRANTED**.

I. Relevant Facts

Plaintiff, Keonta Fisher ("Fisher") (black), contends he was discriminated against by Tommy Coutee ("Coutee") (white) and Kendall Martin ("Martin") (white) and retaliated against by Daniel Long ("Long") (white) while he was employed as a welder by defendant, Bilfinger Industrial Services, Inc. ("Bilfinger").[1] Fisher alleges he was the subject of harassment based upon race from the time he was hired on September 10, 2015 through February 3, 3016, when he was assigned to another Bilfinger crew. He further alleges that he was retaliated against starting in June 2016 for filing a grievance with the local Union and a charge of discrimination with the Equal Employment Opportunity Commission. Specifically, he asserts was written up, suspended, and ultimately terminated.

---

[1] Fisher worked for Bilfinger and its predecessor, Fru-Con, off and on as a welder and pipefitter from April 2007 through October 2013.

According to Fisher, as soon as he began working in September 2015 for foreman Tommy Coutee's crew, he was subjected to discrimination and harassment. On September 14, 2015, Fisher requested Coutee sign a ticket allowing Fisher to check tools out which he needed to perform his job duties. Coutee denied the request and told Fisher he would not be employed long enough to need the tools. Coutee was denied tools for two weeks and told by Coutee that if Fisher would go ahead and help him win the bet by either quitting or being terminated, Coutee would split the money with him.

Fisher says he approached his Union Steward, Tim Belgard ("Belgard"), and the General Foreman Kendall Martin explaining he was being harassed by Coutee and that it made him uncomfortable and he wasn't able to do his job. He asked to be moved to another crew but was told only the Superintendent, Scott Crader, could assign him to another crew.

According to the narrative, Fisher approached Crader and asked for a transfer. Crader, believing the matter to be a personality dispute, told Fisher that a transfer was not possible. He explained Fisher was placed on Coutee's crew because that was where work was available. He suggested that he would speak to Coutee about the matter, but the two men simply needed to learn to get along and work together.

Coutee and Martin allegedly made Fisher the target of their harassing conduct. Examples of the ongoing harassment cited by Fisher were: Coutee's making sexual gestures behind Fisher's back while Fisher was bent down performing a weld; Coutee and Martin's calling Fisher over in front of various crewmen and directing him to clean up feces left at a job site while they watched and laughed; Martin's wiping his finger, with which he had picked his nose, on Fisher's face and then Coutee's joining in by poking Fisher in the side in a taunting manner.

Fisher also reported being yelled and cursed at by Coutee and Martin and cited an instance by each. Coutee is said to have yelled at Fisher when he pulled him off of a weld to help pipefitters with the reading of blueprints and placing of columns and Martin yelled at Fisher, who had been doing his work as required, after he fussed at other crew members for not doing their work.

Tensions between Coutee and Fisher supposedly peaked on February 2, 2016, when the two were at the local Union hall. Fisher approached Coutee to address the "mistreatment" and the conversation escalated to a verbal altercation. (Doc. 52-2 p.4). Fisher "lost his cool" and threw a punch at Coutee. (Doc. 52-2, p.5). Though Fisher was charged by the police with a misdemeanor for fighting, Bilfinger did not take disciplinary action against either employee, citing the fact the fight took place outside of business hours and away from the work site. However, as Long and Belgard were now acutely aware of the conflict between the two men, Long and Belgard agreed that Fisher must be transferred to another crew.

On February 3, 2016, Long and Belgard advised Fisher of the transfer. Fisher, frustrated that he was being moved but Coutee's conduct wasn't being addressed, asked them what he should do. Long told Fisher he could file a complaint with the local Union.

On February 5, 2016, Bilfinger received notice of the complaint and advised Stacey Gregerson, Director of Human Resources for Bilfinger, of the same. Gregerson made a trip to Pineville, Louisiana to investigate the claims of race discrimination and hostile work environment. After interviewing 12 employees, including Fisher, Gregerson found no evidence to support racial animus. She did, however, provide written counsel to Coutee about confirmed workplace cursing.

On February 12, 2016, Fisher filed his EEOC charge alleging race discrimination in the form of harassment and hostile work environment. Upon receiving his right to sue letter, Fisher

3

filed the instant suit asserting identical claims and seeking compensatory and punitive damages, interest, attorney's fees and costs and all other relief deemed just and proper.

## II.	Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anders on v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The nonmoving party must establish the existence of a genuine issue of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations

4

unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Anderson v Liberty Lobby, 477 U.S. at 247.

**III.     Analysis**

Hostile Work Environment

The creation of a hostile work environment through harassment is a form of prohibited discrimination under Title VII. EEOC v. Boh Bros. Const. Co., L.L.C., 731 F.3d 444, 452 (5th Cir. 2013). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). To succeed on a claim of hostile work environment, a plaintiff must show: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition or privilege of employment; and, (5) the employer knew or should have known of the harassment and failed to take remedial action. Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir.2012) (citing Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)); see also Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir.1999).

"Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threating or humiliating, and the degree to which the conduct unreasonably interferes with an employees work performance." Septimus v. Univ. of Hous., 399 F.3d 601, 611 (5th Cir.2005). To be actionable, both the victim and a reasonable person must find it to be an environment that is hostile or abusive. Lauderdale v. Texas Dept. of Criminal Justice, Inv. Div., 512 F.3d 157, 163 (5th Cir.2007). A regular pattern of frequent verbal ridicule or insults sustained

5

over time can constitute severe or pervasive harassment. Walker v. Thompson, 214 F.3d 615, 626 (5th Cir.2000). Simple teasing, offhand comments, and isolated incidents, unless extremely serious, are insufficient to affect the terms, conditions or privileges of employment. Lauderdale, 214 F.3d at 626.

Fisher is a member of a protected class and the information establish he was subjected to unwelcome harassment. However, Fisher fails to establish the harassment was based on race. Fifth Circuit precedent clearly establishes a plaintiff's personal beliefs of racial motivation cannot import racial animus into an adverse individual's conduct. One must provide objective evidence to substantiate the plaintiff's claims that the conduct was race based. Lyles v. Texas Alcohol Beverage Com'n, 379 Fed.Appx. 380, 384-85 (5th Cir.2010); Cavalier v. Clearlake Rehab. Hosp., Inc., 306 Fed.Appx. 104, 107 (5th Cir. 2009); Johnson v. TCB Const. Co., Inc., 334 Fed.Appx. 666, 671 (5th Cir.2009); Garza v. Laredo Indep. Sch. Dist., 309 Fed.Appx. 806, 809 (5th Cir.2009); Baker v. FedEx Ground Package Sys., Inc., 278 Fed.Appx. 322, 329 (5th Cir.2008); Ellis v. Principi, 246 Fed.Appx. 867, 871 (5th Cir.2007); Harris-Childs v. Medco Health Solutions, Inc., 169 Fed.Appx. 913, 917 (5th Cir.2006).

Fisher cites only two instances of supposed racial animus. The first is confirmed though Waylon William's affidavit in which Williams states Coutee told him he "just broke two niggers up yesterday." Though the statement is clearly race based, it does not help establish Fisher's claim of race based harassment as the statement was never heard by Fisher. The second instance of racial animus asserted by Fisher and confirmed by Kedrick Smith's affidavit is that Coutee "repeatedly" called them "boy." However, neither Fisher nor Smith provide a single example of when Coutee used the term. Without a single example, we can hardly find Coutee used the term in a discriminatory manner, much less repeatedly.

6

The "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not affect the terms [,] conditions, or privileges of employment to a sufficiently significant degree to violate Title VII." Jones v. Flagship Intern., 793 F.2d 714, 720 (5th Cir. 1986) (alterations in original). "'[S]poradic use of abusive language' is outside of Title VII's purview." Dailey v. Shintech, Inc., 629 Fed.Appx. 638, 644 (5th Cir. 2015) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)); see also Harilall v. University Health System Development Corp., 174 F.3d 197, *4 (5th Cir. 1999) ("Wetback" and "illegal alien" comments were insufficient to constitute "pervasive harassment actionable under Title VII"); Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 341-42 (5th Cir. 2007) (Repeated references to "ghetto children," statement that African-American students attended evening college classes because they could not qualify for regular admission, and negative comments about plaintiff's lifestyle were insufficient to demonstrate a hostile work environment); Dailey, 629 Fed.Appx. at 640, 644 (Allegations plaintiff's supervisor had called plaintiff a "black little motherf—r" on at least two occasions and told plaintiff he would "kick his black a—s" did not rise to the level of "severe or pervasive" harassment); Baker v. FedEx Ground Package System Inc., 278 Fed.Appx. 322, *5 (5th Cir. 2008) (Supervisor's comments that "she did not want to work with people like" plaintiff and that "whites rule" were insufficiently severe and did not unreasonably interfere with plaintiff's work performance). The subjective belief of racial discrimination via harassment without more is insufficient to establish a hostile work environment.

Even if Fisher could establish harassment based on race, he cannot establish it affected a term, condition, or privilege of employment. The harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." Ramsey, 286 F.3d at 268 (quoting Harris, 510 U.S. at 21). While Fisher attempts

7

to show that terms of his employment were affected by the harassment, he only points to his inability to check out tools in September 2015. The record, including Fisher's own arguments and deposition testimony, establishes that despite Coutee's best efforts, Fisher obtained the needed tools and worked hard each and every day. Because Fisher failed to show the comments "affected a term, condition, or privilege of employment" his hostile work environment claim must be dismissed.

Retaliation

Bilfinger also moves for summary judgment on Fisher's retaliation claims. Fisher loosely asserts retaliation claims against Long and Coutee claiming Long threatened to fire him if he reported complaints of discriminatory and harassing conduct to Proctor and Gamble, and Coutee retaliated against him after being transferred to another crew by making faces at him.

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3(a). To establish a *prima facie* case of retaliation, Fisher must establish: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment. Cabral v. Brennan, 853 F.3d 763, 766-67 (5th Cir. 2017) (quoting Jenkins v. City of San Antonio Fire Dept., 784 F.3d 263, 269 (5th Cir. 2015); Harvill v. Westward Commc'ns, LLC, 433 F.3d 428, 439 (5th Cir.2005).

At the time Long allegedly threatened Fisher with termination, Fisher had not undertaken any conduct opposing an unlawful employment practice. Accordingly, the allegations are not

8

actionable under retaliation. At most, the threat could be considered harassment, but as discussed above, there are no allegations to support a determination that the alleged threat was race based. Accordingly, the claim lacks merit and should be dismissed.

As to Fisher's claim of retaliation by Coutee, we acknowledge that the faces were made after Fisher filed his complaints with the local Union and the EEOC. However, making faces does not rise to the level of retaliation under Title VII. The claim is frivolous and should be dismissed.

Finally, we address Fisher's assertion, raised for the first time in his opposition to the motion for summary judgment, that he was retaliated against after he filed complaints with his local union and the EEOC. Fisher alleges that within four months of filing complaints, he was written up for tardiness and absenteeism and ultimately fired for the same. This claim was not raised in Fisher's complaint nor by Fisher in his deposition. Rather, it was asserted in his opposition to the motion for summary judgment as a last ditch effort to save his retaliation claim. Not only do we find that claim should be dismissed as it was not properly asserted but we also find it lacks a legal basis. There is simply no evidence before the court that Bilfinger began writing Fisher up or terminated him because he filed complaints. See Medina v. Ramsey Steel Co., 238 F.3d 674, 684 (5th Cir.2001). Where, as here, the only evidence in support of a causal connection is temporal proximity, the time between the protected activity and the adverse employment action must be "very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-274 (2001) (*per curium*). The Fifth Circuit case law, "although largely unpublished, 'fits with the Supreme Court's requirement that the temporal proximity be "very close" to show causation." Flanner v. Chase Inv. Services Corp., 600 Fed.Appx. 914, 922 (5th Cir.2015) (unpublished). See also Barkley v. Singing River Elec. Power Ass'n, 433 Fed.Appx. 254, 260 (5th Cir.2011) (unpublished) (citing Ajao v. Bed Bath & Beyond, Inc., 265 Fed.Appx. 258, 256 (5th Cir.2008) (*per curiam*)(finding

9

temporal proximity of four months "not close enough); Myers v. Crestone Int'l, LLC, 121 Fed.Appx. 25, 28 (5th Cir.2005) (per *curiam*) (three-month gap did not, by itself, create a causal link); Raggs v. Miss. Power & Light Co., 278 F.3d 436, 471-72 (5th Cir.2002) (five-month lapse, same)). See also Everett v. Cent. Mississippi, Inc. Head Start Program, 444 Fed.Appx. 38, 47 (5th Cir.2011) (unpublished) (finding temporal proximity of five months not close enough). Here, we have a three to four month period between Fisher's filings and the first time he was written up for tardiness. An additional three months passed before he was terminated for excessive tardiness and absenteeism.

Moreover, even if Fisher could establish a *prima facie* case of retaliation, he has not presented any evidence to overcome Bilfinger's legitimate, nondiscriminatory reason for Fisher's termination, tardiness and absenteeism. Accordingly, he cannot establish a claim for retaliation regardless of the theory asserted.

**IV. Conclusion**

For the reasons set forth above, Bilfinger's motion for summary judgment should be granted. The court will issue a judgment in conformity with these findings.

**THUS DONE AND SIGNED** this 25 day of March 2020, at Alexandria, Louisiana.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT

10